IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JONATHAN WILLIAMS,** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 23-CV-1137 |
| | : | |
| **RYAN WILLIAMS,** *et al.* | : | |
| Defendants. | : | |

**MEMORANDUM**

*Pro se* Plaintiff Jonathan Williams, a pretrial detainee currently housed at the Federal Detention Center in Philadelphia ("FDC Philadelphia"), filed this civil action alleging that his constitutional rights were violated. Williams seeks to proceed *in forma pauperis*. Named as Defendants are the following individuals (whose full names are not always provided in the Complaint): Ryan Williams, Supervisor Shannon, Supervisor Maynard, Officer C. Colon, Officer E. Stevenson, John Doe Regional Director, and Officer Mark Maxium. For the following reasons, the Court will grant Williams leave to proceed *in forma pauperis* and dismiss his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), in part with prejudice and in part without prejudice.

**I.    FACTUAL ALLEGATIONS**[1]

The allegations in Williams's Complaint are disjointed but generally concern various ways in which he believes his constitutional rights have been violated during his confinement at FDC Philadelphia.

---

[1] The allegations as set forth are taken from Williams's Complaint and the public dockets, of which the Court may take judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006); *Orabi v. Att'y Gen. of the U.S.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014).

Williams asserts that he was "l[ed] on and led off of the 7-South housing unit" on November 9, 2022, by Defendant Maynard who is a "extremely hostile Republican Voter" and who can be seen "on video talking to equally angry, and hostile, [non-party] Rebecca Huseman, another Republican." He also contends that he "was cuffed on November 9, 2022 and placed inside of a tiny black cage, that was illegally built by Correctional Police employed at the Federal Detention Center." Williams avers that he was placed in the cage "to demonize [him] in the presence of the Wardens who all viewed plaintiff in the corner cage, except for newly hired [non-party] Mr. Ramos." He suffered "significant emotional distress by being placed in a tiny cage."

Williams claims that Defendant Ryan Williams, while walking past Plaintiff's cell and observing him praying, stated, "[y]our boy Martin Luther stayed on his knees too, you fuckin' retard! Half his face was on that freakin' balcony, big mouth mother fuckers!" Ryan Williams further allegedly remarked to Plaintiff, while he was preparing his Complaint, that "[t]hose District Court Clerks are on our side stupid. They got [a] million ways to get any fuckin' inmate lawsuit tossed out!"

Williams also claims that he "has been subjected to freezing temperatures inside of the so-called 'Special Housing Unit' throughout his illegal imprisonment" at the FDC. At the time he drafted his Complaint, he states his hands were "cold and numb" and he had "lost all feeling[] in his right index finger as well as all feeling in his thin pinky finger on his left hand."

Williams alleges that Defendant Colon "entered the Special Housing Area [on December 26, 2022] with a large black bookbag swung over one of his shoulders" and "entered the storage area where [Williams's] property bag is located." According to Williams, Colon "is on camera being covered by Defendant Mark Maxium." Williams claims that Defendant Colon exited the

storage area a "short while later" and, while walking toward Williams's cell, stated, "Fuck your legal mail, and your legal paperwork.  All this shit belong to me, you retarded ass nigger!" Williams contends that "while Defendant Colon was exiting the 'Range One-SHU Area' with [Williams's] legal papers in his bag," Maxium stated, "[h]ow can you win a lawsuit when we can just take your papers smart ass!"

Williams alleges that Defendant Stevenson "is a convicted felon by his own admission." Stevenson allegedly stated to Williams on one occasion, "You can have a firearm with a felony conviction and work here.  A lot of people entered the military with felonies.  Served one tour, now we can't be touched."  According to Williams, Defendant Stevenson has "violently attacked multiple inmates in handcuffs[] and is an illegal hire."

Williams alleges that "all inmates being housed on the North Side of the Special Housing Unit (SHU) are being illegally denied usage of the Inmate Law Library, including Plaintiff[.]"

Williams also contends that, as of the writing of his Complaint, he had been unlawfully detained for fourteen months and has been denied due process since his arrest.  He also avers that he did not receive a jury trial "within (90) days of the date of arrest" in violation of his right to a speedy trial.  Williams further asserts that he has not received any discovery with respect to the charges against him and that no federal grand jury has been convened against him.

Additionally, Williams appears to be under the belief that Beyoncé Knowles Carter is a presidential candidate.  Williams contends that he had a verbal exchange with Defendant Shannon, during which Shannon "screamed at Plaintiff Williams and stated, 'You fucking nigger, you want that black whore to be my fucking President!'"  Williams also "asserts that he telepathically communicated to the ESPN sports show 'Final Take' that Beyoncé should be President of the Federal Government."  Plaintiff claims that Defendant Ryan Williams "has made

3

multiple threats to kill the children of soon to be elected President, Beyoncé Knowles Carter." He further alleges that Defendant Ryan Williams stated "Jay-Z wife think her bullet proof house can stop a fifty caliber sniper rifle.  I promise you, I will flip all of them, through their bullet-proof windows!"

As relief, Williams seeks release from detention and dismissal of the charges against him.  He further seeks monetary damages in the amount of $500,000 to "compensate [him] for all emotional and physical injuries."  He also requests a "Judicial Alert" warning "Presidential Candidate Beyoncé Knowles Carter of threats" as well as "full disclosure of all of the defendants['] felony records."[2]

The publicly available docket in Williams's criminal case reveals that a federal criminal complaint was filed on November 2, 2021 against Williams for threats against a member of the federal judiciary.  *See United States v. Williams*, 21-MJ-15460 (D.N.J. November 2, 2021) (ECF No. 1).  Williams was brought before a United States Magistrate Judge on November 4, 2021 for an initial appearance.  *Id*. (ECF No. 4).  He was ordered to be detained and to be evaluated for competency pursuant to 18 U.S.C. § 4241(b).  *Id.* (ECF No. 9).  The current status of Williams's federal criminal case is unclear from the publicly available docket.

## II.     STANDARD OF REVIEW

The Court will grant Williams leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3]  Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if it is frivolous, malicious, fails to

---

[2] To the extent that Williams seeks the disclosure of criminal records in order to discharge one or more of the Defendants from their employment, the Court has no authority to order that any Defendant be terminated from his employment.  *See Hall v. Carny*, 2023 WL 187569, at *1 n.3 (E.D. Pa. Jan. 13, 2023) (dismissing with prejudice claim seeking that defendant prison official be terminated from his employment) (listing cases).

[3] Because Williams is a prisoner, he must still pay the $350 filing fee in installments as mandated by the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

state a claim, or seeks relief from an immune defendant.  A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The use of the term "frivolous" in Section 1915 "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Id.*  Section 1915 accords judges "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Id.* at 327.  "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  A claim is legally baseless if it is "based on an indisputably meritless legal theory[.]" *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted).  "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [the] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Williams is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

5

### III.  DISCUSSION

#### A.  Claims Relating to Beyoncé Knowles Carter's Presidential Candidacy

To address a preliminary issue, Williams may not proceed on his claims pertaining to Beyoncé Knowles Carter as a putative presidential candidate because his allegations rise to the level of factually and legally baseless.  *See Ackerman v. Mercy Behav. Health*, 621 F. App'x 711, 714 (3d Cir. 2015) (*per curiam*) (affirming dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) because "there is no logical construction of the complaint from which to derive a legal claim for which relief is available in federal court").  Accordingly, Williams's claims based on the alleged presidential candidacy of Ms. Carter will be dismissed with prejudice as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

#### B.  Request for Release and Dismissal of Federal Charges

Williams alleges that his constitutional rights have been violated because he has been unlawfully detained without due process since his arrest.  He also claims his speedy trial rights have been denied during his pretrial detention.  As relief, he seeks dismissal of the charges against him and release from confinement.  To the extent he seeks such relief, Williams's Complaint can be understood to seek habeas relief under 28 U.S.C. § 2241.  *See, e.g.*, *Lazil v. Bureau of Immigr. & Customs Enf't*, 2005 WL 758248, at *1 (E.D. Pa. Mar. 31, 2005) (construing *pro se* complaint liberally as a Section 2241 habeas petition).

A federal pretrial detainee challenging the validity of charges and his pretrial detention in a federal criminal case must raise such claims in a pretrial motion in the federal criminal case.  *Reese v. Warden Philadelphia FDC*, 904 F.3d 244, 247 (3d Cir. 2018); *see also Goode v. Zaleski*, 2023 WL 4602660, at *3 (E.D. Pa. July 17, 2023) (dismissing *pro se* federal detainee's "[c]laims seeking dismissal of federal criminal charges" because they are "not cognizable in a

civil rights action because a federal detainee's request for dismissal of the indictment against him must be pursued in his federal criminal case") (listing similar cases).  In *Reese*, the Third Circuit noted that insofar as the detainee sought to challenge the charges against him or the conduct of law-enforcement officers during arrest or interrogation, he was required to do so through pretrial motions in his criminal case, not via a pretrial Section 2241 habeas petition, so as to "encourage[] an orderly, efficient resolution of the issues, maintain[] respect for the appellate process, and prevent[] duplication of judicial work and judge-shopping."  *Id.* at 247.  The court further found that Section 2241 habeas is not the proper vehicle to challenge federal pretrial detention because the Bail Reform Act of 1984, 18 U.S.C. §§ 3141-3150, "provides a comprehensive scheme governing pretrial-release decisions."  *Reese*, 904 F.3d at 247.  The Third Circuit has similarly determined that deciding whether delay in bringing a pretrial detainee to trial has violated the detainee's speedy trial rights "is a matter to be determined in first instance on an appropriate pretrial motion."  *Gov't of Virgin Islands v. Bolones*, 427 F.2d 1135, 1136 (3d Cir. 1970); *Reese*, 904 F.3d at 247 (citing *Bolones*, 427 F.2d 1135).

Accordingly, to the extent Williams seeks his release and dismissal of any charges against him through pretrial habeas relief, such claims are dismissed.

### C.  *Bivens* Claims

Williams's Complaint, liberally construed, brings multiple claims pursuant to *Bivens*, 403 U.S. 388.  *Bivens* actions provide a judicially recognized damages remedy for constitutional violations committed by federal actors in their individual capacities in limited circumstances.  *See Egbert v. Boule*, 142 S. Ct. 1793, 1799-1804 (2022); *Ziglar v. Abbasi*, 582 U.S. 120, 130-31 (2017).  The U.S. Supreme Court has recognized this implied private action against federal officials in only three cases:  (1) *Bivens* itself, 403 U.S. 388, which recognized an implied cause

of action for violations of the Fourth Amendment's protection against unreasonable searches and seizures; (2) *Davis v. Passman*, 442 U.S. 228 (1979), which recognized a claim for sex discrimination under the Fifth Amendment's Due Process Clause; and (3) *Carlson v. Green*, 446 U.S. 14 (1980), which recognized a claim against prison officials for inadequate medical care in the prison context under the Eighth Amendment's prohibition against cruel and unusual punishment.  *See Vanderklok v. United States*, 868 F.3d 189, 198 (3d Cir. 2017); *see also Abbasi*, 582 U.S. at 131.  Since these three cases, however, the Supreme Court has "repeatedly refused to extend the *Bivens* remedy to any other amendment, context, or category of defendant.  Instead, it has clearly communicated that *Bivens* is a 'disfavored judicial activity[.]'"  *Xi v. Haugen*, 68 F.4th 824, 832 (3d Cir. 2023) (quoting *Abbasi*, 582 U.S. at 135); *see also Mack v. Yost*, 968 F.3d 311, 318 (3d Cir. 2020).

The Supreme Court has set forth a two-step framework for courts to follow when analyzing *Bivens* claims.  *See Mack*, 968 F.3d at 317; *Xi*, 68 F.4th at 833.  "First, courts must determine whether the *Bivens* claim presents a "new context."'  *Mack*, 968 F.3d at 317 (citing *Abbasi*, 582 U.S. at 138).  A new context is presented "[i]f the case is different in a meaningful way from previous *Bivens* cases[.]"  *Abbasi*, 582 U.S. at 139; *see Mack*, 968 F.3d at 317.  In other words, "[a] context may be regarded as new if it is different in any meaningful way from the three contexts where the Court has recognized a *Bivens* remedy, and even a modest extension is still an extension."  *Xi*, 68 F.4th at 834 (internal citations and quotations omitted).  "[T]he category of new contexts is broad, and this threshold test is easily satisfied."  *Id.* (internal citations and quotations omitted).

If a case presents a "new context," a court then asks whether there are "special factors counselling hesitation" in expanding *Bivens*.  *Mack*, 968 F.3d at 317 (quoting *Abbasi*, 582 U.S. at

136); *see also Abbasi*, 582 U.S. at 136 ("[T]he [special factor] inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."). The Third Circuit has identified two special factors as "'particularly weighty': the availability of an alternative remedial structure and separation-of-powers concerns." *Mack*, 968 F.3d at 320 (citation omitted); *see also Abbasi*, 582 U.S. at 137 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action.").

Furthermore, even if a *Bivens* remedy exists, a plaintiff must allege the personal involvement of each defendant to state a claim. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

1. **Access to the Courts Claims**

Williams appears to allege that Defendant Colon removed his "legal mail and . . . legal paperwork" from his "property bag," stating "[all] this shit belong[s] to me" while doing so. Additionally, he alleges that Defendant Maxium said around the same time, "[h]ow can you win a lawsuit when we can just take your papers smart ass!" Williams also alleges that inmates in part of the facility do not have access to the law library.[4]

Williams's allegations are best construed as alleging that Defendants' actions denied him access to the courts in violation of his rights secured by the First and Fourteenth Amendment.

---

[4] Williams does not, however, tie this particular allegation to any named Defendant. It is well-established that "liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Iqbal*, 556 U.S. at 676 (affirming the same principle in the *Bivens* context). Accordingly, this allegation, without more, does not provide a basis for liability.

*See Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) ("Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts.").

"Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'— that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Id.* at 205 (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). The right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher*, 536 U.S. at 415. In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the deficiencies of which he complains. *See, e.g.*, *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*). Additionally, the complaint "must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" *Monroe*, 536 F.3d at 205-06 (citing *Christopher*, 536 U.S. at 416-17).

Even assuming a *Bivens* remedy exists in this context,[5] an inquiry the Court declines to address at the initial screening stage in light of the other deficiencies in the Complaint identified *infra*, *see Rowland v. Pistro*, 2021 WL 5631692, at *8 n.10 (E.D. Pa. Nov. 29, 2021), Williams has failed to plausibly allege any actual injury resulting from a named Defendant's conduct that could equate to a denial of access to the courts. Williams has not alleged what underlying

---

[5] After the Supreme Court's guidance in *Abbasi*, courts have declined to extend *Bivens* to claims alleging denial of access to the courts. *See, e.g., Jones v. Bradley*, 2023 WL 2088430, at *3 (M.D. Pa. Feb. 17, 2023) (listing cases); *Goldberg v. United States*, 2022 WL 833295, at *3 (D.N.J. Mar. 21, 2022); *Bossio v. Spaulding*, 2021 WL 4123975, at *5 (M.D. Pa. Sept. 9, 2021); *see also Smith v. Ebbert*, 2021 WL 2660872, at *4 (M.D. Pa. June 29, 2021) (collecting cases). Moreover, "the Supreme Court has never recognized a *Bivens* remedy under the First Amendment." *Bistrian v. Levi*, 912 F.3d 79, 95 (3d Cir. 2018).

10

nonfrivolous claims he was unable to pursue as a result of any Defendant's actions. *See, e.g.*, *Monroe*, 536 F.3d at 206 (finding that plaintiffs failed to state a claim when they alleged "they lost the opportunity to pursue attacks of their convictions and civil rights claims" but did not "specify facts demonstrating that the claims were nonfrivolous").

Accordingly, Williams's claims predicated on lack of access to the courts will be dismissed without prejudice for failure to state a claim.

### 2. Conditions of Confinement Claims

Williams presents several allegations relating to the conditions of his confinement at FDC Philadelphia, but the allegations are vague and undeveloped. For example, Williams claims that he "placed inside of a tiny black cage" "to demonize [him]" and that he was subject to "freezing temperatures" in the facility.

Even assuming that Williams's conditions of confinement claims are cognizable under *Bivens*,[6] which again the Court declines to address at this screening stage, *see Rowland*, 2021 WL 5631692, at *6, Williams's allegations concerning the conditions at FDC Philadelphia are so vague and undeveloped the Court cannot conclude he has stated a plausible claim for relief in any case. Additionally, Williams has not clearly alleged the personal involvement of any named Defendant with regard to the conditions of confinement claims. As noted, "a plaintiff must plead

---

[6] No precedential Third Circuit decision has sanctioned a claim under *Bivens* based on conditions of confinement similar to the claims Williams seeks to bring. In *Mammana v. Barben*, 856 F. App'x 411, 415-16 (3d Cir. 2021), a non-precedential opinion, the majority declined to imply a "cause of action to sue federal prison officials for unconstitutional conditions of confinement," over the dissent of the Honorable Patty Shwartz, who concluded that a federal prisoner could sue a corrections officer "based upon inhumane conditions of confinement that violate the Eighth Amendment right to be free from cruel and unusual punishment."

Lower courts in this jurisdiction have refused to extend *Bivens* to conditions of confinement claims. *See, e.g.*, *Brown v. United States*, 2023 WL 2632811, at *20-21 (M.D. Pa. Mar. 24, 2023) (concluding special factors counseled against permitting an expansion of *Bivens* to plaintiff's Eighth Amendment conditions of confinement claim); *Walker v. United States*, 2022 WL 1472872, at *4 (M.D. Pa. May 10, 2022) (stating that "[t]he Supreme Court has never extended *Bivens* to claims against federal prison officials regarding conditions of confinement").

that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  Moreover, even if Williams had sufficiently alleged how the named Defendants were responsible for the alleged deprivations, in order to state a plausible constitutional violation, Williams would nonetheless have to allege that the conditions under which he was confined amounted to punishment.  Pretrial detainees in federal custody are protected from "punishment" by the Due Process Clause of the Fifth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *cf. Bistrian*, 912 F.3d at 91 ("[T]he Fifth Amendment provides the same, if not more, protection for pretrial detainees than the Eighth Amendment does for imprisoned convicts.").  "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007).  "[T]he objective component requires an inquiry into whether 'the deprivation [was] sufficiently serious' and the subjective component asks whether 'the officials act[ed] with a sufficiently culpable state of mind[.]'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Williams's allegations are too vague and undeveloped to evaluate his constitutional claims under these standards.

Accordingly, Williams's claims based on the conditions of his confinement will be dismissed without prejudice for failure to state a claim.[7]

---

[7] Williams further claims that he "suffered significant emotional distress by being placed in a tiny cage" and references a definition of "intentional infliction of emotional distress" under Pennsylvania law.  To the extent this allegation could be liberally construed to raise a claim under the Federal Tort Claims Act ("FTCA"), any such claim is baseless.  The FTCA waives the United States' sovereign immunity for claims sounding in state tort law for money damages.  28 U.S.C. § 2674 (waiving sovereign immunity to make the United States liable "in the same manner and to the same extent as a private individual under like circumstances"); *Sosa v. Alvarez-Machain*, 542 U.S. 692, 700 (2004) ("The FTCA was designed primarily to remove the sovereign immunity of the United States from suits in tort . . . with certain specific exceptions[.]" (citation omitted)).  However, this waiver of immunity is subject to certain limitations and jurisdictional requirements.  For example, the United States is the only proper defendant in an FTCA action.  *See CNA v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008).  In addition, a plaintiff must exhaust administrative remedies as a prerequisite to filing a lawsuit under the FTCA.  *See* 28 U.S.C. § 2675(a).  In other words, "[n]o claim can be brought under the FTCA unless the plaintiff first presents the claim to the appropriate federal agency and the agency renders a final decision on the claim." *Shelton v. Bledsoe*, 775 F.3d 554, 569 (3d Cir. 2015).  Because Williams has not named the United States as a defendant and because he has not pled any facts about administrative exhaustion, any FTCA claim he may have intended must be dismissed.

### 3. Claims Based on Verbal Threats and Harassment

To the extent Williams seeks to raise claims based on verbal threats and harassment, the claims must be dismissed. Even assuming that a *Bivens* action is available for such claims, an inquiry the Court again declines to address at the screening stage, *see Rowland*, 2021 WL 5631692, at *6, Williams's allegations that Defendant Ryan Williams verbally threatened and harassed him do not state plausible claims because verbal threats or taunts, without more, are insufficient to violate the Constitution. "It is well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment." *Robinson v. Taylor*, 204 F. App'x 155, 156 (3d Cir. 2006) (*per curiam*) (citations omitted); *see also Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (*per curiam*) ("[V]erbal threats or taunts, without more, are not sufficient to constitute a violation of the Eighth Amendment."); *Ortiz v. Cicchitello*, 2023 WL 3044603, at *2 (M.D. Pa. Apr. 21, 2023) ("Generally, . . . conduct like verbal harassment, taunting, and use of profanity, without any injury or threat thereof, is insufficient to implicate a constitutional infringement under either the Eighth or Fourteenth Amendment."); *Quiero v. Muniz*, 2015 WL 13738994, at *5 (M.D. Pa. Aug. 3, 2015) ("[A]llegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under § 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner." (citation omitted)). Since verbal threats, harassment, and the use of profanity, without more, are insufficient to state a constitutional claim, Williams's claims along these lines will be dismissed without prejudice.

### IV. CONCLUSION

As set forth more fully *supra*, the Court will grant Williams leave to proceed *in forma pauperis* and dismiss his Complaint in part with prejudice and in part without prejudice. Williams's claims pertaining to Beyoncé Knowles Carter will be dismissed with prejudice as

frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).  The claims requesting release from custody and dismissal of the charges against him will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  The Court concludes that amendment of these claims would be futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (holding that district courts should dismiss complaints with leave to amend "unless amendment would be inequitable or futile.").

    Williams's *Bivens* claims based on the conditions of his confinement at FDC Philadelphia, lack of access to the courts, and verbal threats and harassment will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim and he will be given leave to file an amended complaint to cure the deficiencies in these claims.

    An appropriate order follows.

**BY THE COURT:**

/s/Wendy Beetlestone, J.

_____
**WENDY BEETLESTONE, J.**